IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                                     No. CR 09-1463 BB

JUAN AYVAR-LOPEZ,

        Defendant.

**MEMORANDUM OPINION
ON
MOTION FOR CLARIFICATION**

THIS MATTER is before the Court on the Motion of Defendant Juan Ayvar-Lopez for a Clarification [doc. 77] of this Court's Order Partially Granting Motion to Suppress [doc. 74]. Having considered all submissions of counsel and having heard testimony on April 6, 2010, on the original Motion to Suppress and on July 28, 2010, on the Motion for Clarification, the Court provides this opinion as clarification of its prior holding.

*Discussion*

This Court addressed the search of Defendant's apartment and truck in the partial order of suppression. I suppressed any evidence found as a result of the initial search of the truck as Mr. Ayvar-Lopez had not consented to the agents' taking the keys to search the truck, but ruled that any search of the truck, after Ms. Thomas gave the keys to Agent Godier, was legal as she was a registered owner of the truck and had

**apparent authority to consent to a search of it. Defendant now requests clarification on the seizure of the key ring and the keys other than those of the truck, specifically the key to the apartment of Defendant's brother and co-Defendant, Ernesto Ayvar-Lopez, and the key to the safe found at that apartment.**

**The Government has raised two main arguments as to why the key ring should not be suppressed. First, the Government claims Defendant himself gave the agents permission to take the key ring. The Court found against the Government on this issue. And there is certainly nothing in the transcript from which it could even be inferred that Defendant gave them permission to keep all of the keys on the key ring and use them in any locks they might find. For example, Agent Bartusiak's testimony about the key ring was that he saw it on the dresser, and was "interested in searching the silver pickup also. And I asked Mr. Ayvar-Lopez <u>if we could look at the truck</u>." (Emphasis added). Defendant supposedly replied, "I have nothing to hide. Go ahead and look." Agent Bartusiak then testified, "So I gave the keys to Special Agent Godier."**

**The Government's next argument is that Audrey Thomas, Defendant's wife, had actual or at least apparent authority to hand over the keys to the agents. This argument is more persuasive. A third party can give valid consent to a search (or seizure) if the third party has either actual or apparent authority to give such consent. *See United States v. Sanchez*, 608 F.3d 685, 689 n. 1 (10th Cir. 2010); *United States v. Cos*, 498 F.3d 1115, 1128-29 (10th Cir. 2007).**

A good argument can be made that Audrey Thomas, Defendant's wife, had actual authority to turn over the key ring to Agent Godier. The standards for assessing actual authority to consent are: (1) mutual use of the property by virtue of joint access, or (2) control for most purposes over it." *United States v. Cos*, 498 F.3d at 1125 (quoting *United States v. Rith*, 164 F.3d 1323, 1329 (10th Cir. 1999)). The first standard is normative and requires the Government to prove mutual use by virtue of joint use as a factual matter. *Cos, id.* Here, Ms. Thomas clearly had access to the key ring and the bedroom dresser where she lived. The ring contained keys to their apartment and a truck titled in her name, and, unlike the closet safe, she did not disclaim control. Ms. Thomas did not, however, claim access to the co-Defendant's Brookline rental even though it was rented in her sister's name. The question then becomes whether the focus is the key ring or what the keys open.

The second inquiry under the *Cos-Rith* test for actual authority is normative and the question turns initially on the relation of the consenting party to Defendant. *Id.; see also United States v. Dozal*, 173 F.3d 787, 792 (10th Cir. 1999). The husband–wife relationship triggers a presumption of actual authority shifting the burden to the party challenging consent. Defendant did not carry this burden based on the present record. Even if Defendant could successfully overcome the presumption on actual authority, however, he clearly fails on apparent authority.

A third party has apparent authority to consent to a search if a police officer reasonably, but erroneously, believes that the third party has actual authority to consent. *Cos* at 1126. This inquiry is an objective one. *Id.* The test is whether the officer has a reasonable belief that the third party has mutual use of the property by virtue of joint access, or has control over it for most purposes. *Id.* Agent Bartusiak testified that he thought the keys belonged to both Defendant and Ms. Thomas. He reiterated that belief on cross-examination, saying, "I believe they belonged to both of them. She had keys on that ring also." As Agent Bartusiak noted, Ms. Thomas had, or apparently had, her apartment keys on the ring; she did not object to handing the keys over by saying the keys did not belong to her; she is married to Defendant; and the silver pickup is registered in her name and its key was on the key ring. A reasonable officer would reasonably believe she had joint control over the key ring and the keys on it. *See United States v. Sanchez*, 608 F.3d at 689; *United States v. Andrus*, 483 F.3d 711, 720 (10th Cir.), *clarified at*, 499 F.3d 1162 (10th Cir. 2007); *United States v. Kimoana*, 383 F.3d 1215, 1222 (10th Cir. 2004).

Finally, Defendant argues consent by Ms. Thomas was invalid because Defendant Juan Ayvar-Lopez had been arrested and removed from the apartment before consent was given, so he could not challenge or revoke such consent. Defendant relies on *Georgia v. Randolph*, 547 U.S. 103, 121-22 (2006), to support this contention. In *Randolph*, of course, the defendant was present and challenged his wife's consent. It

does not follow, however, that the police have a legal obligation to leave a defendant at the scene of a potential search so he can challenge any consent or to consult him about such a search after his legitimate removal. While it may be true that third party consent can be invalidated by intentionally removing any defendant to deprive him of the right to deny consent, the mere fact that a spouse gave consent while defendant is legitimately detained does not invalidate the consent. *United States v. Ryerson*, 545 F.3d 483 (7th Cir. 2008). When a defendant has been legally arrested and removed from the scene, it does not deprive a spouse of the apparent authority to consent to a search; even when the police are aware the defendant objected before his arrest. *United States v. Henderson*, 536 F.3d 776, 781-82 (7th Cir. 2008); *United States v. Hudspeth*, 518 F.3d 954, 960-61 (8th Cir. 2008) (en banc), *contra, United States v. Murphy*, 516 F.3d 1117 (9th Cir. 2008).

## *Conclusion*

Ms. Thomas had, at the very least, the apparent authority to turn the keys over to the Agent Godier, and Agent Bartusiak's use of the keys at the Brookline residence of Defendant's brother was therefore legal.

_____
**BRUCE D. BLACK**
**United States District Judge**